[S. F. No. 7499.  In Bank.—August 5, 1915.]

UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

INJUNCTION—TEMPORARY INJUNCTION GRANTED AFTER NOTICE—SUPERIOR COURT CANNOT STAY OPERATION.—In view of the provisions of the law of this state, constitutional and statutory, a superior court, which, by order duly and regularly made upon notice and hearing, has granted a temporary or provisional injunction absolutely restraining a defendant from the commission of certain acts during the pendency of the action, without reserving any right of revocation or modification, has no power subsequently to make an order staying the operation of the injunction until the final determination of the cause, or until a contemplated appeal from such order has been heard and determined.

ID.—PRELIMINARY INJUNCTION CAN ONLY BE REVIEWED ON APPEAL.—The only review allowed of such a preliminary injunction is a review on appeal, except in the single case of an injunction to prevent the diversion, pending the litigation, of water used or to be used for irrigation or domestic purposes.

ID.—STATUTORY METHOD OF REVIEW MUST BE FOLLOWED.—The superior court may not revoke, modify or otherwise disturb its judgments and orders regularly made in pursuance of plain statutory provisions, where the statute prescribes the method by which such judgments and orders may be reviewed, except as authorized by statute.

ID.—CONSTITUTIONAL LAW—EQUITABLE JURISDICTION OF SUPERIOR COURT.—The provision of the state constitution of 1879 conferring on the superior courts "original jurisdiction in all cases in equity," does not prevent the legislature from enacting the scheme provided for by sections 525 to 533 of the Code of Civil Procedure, regulating the exercise by the superior courts of its equitable jurisdiction in the matter of provisional injunctions.

ID.—CONSTRUCTION OF CONSTITUTION—SIMILAR PROVISIONS IN PRIOR CONSTITUTIONS.—Such provision of the constitution of 1879, being substantially similar to the provision of the constitution of 1849 and identical with the amendment of 1862, should be given the same construction as that placed upon the prior constitutional provisions by the supreme court.

APPLICATION for a Writ of Prohibition directed to the Superior Court of the City and County of San Francisco, and to James M. Troutt, Judge thereof.

The facts are stated in the opinion of the court.

Wm. M. Abbott, and Wm. M. Cannon, for Petitioner.

Percy V. Long, City Attorney, for Respondents.

Sullivan & Sullivan and Theo. J. Roche, *Amici Curiae*, for Respondents.

ANGELLOTTI, C. J.—This is an application to this court for a writ of prohibition restraining the superior court of the city and county of San Francisco from hearing or determining a certain motion and a certain order to show cause, in an action pending in said court wherein this petitioner is the plaintiff and the city and county of San Francisco is the defendant, said action being numbered 65435 in said court. There is no dispute as to the material facts. The action was one to obtain a decree perpetually restraining the defendant city and county from the commission of certain acts in the operation of its municipal railroad. Upon the filing of the verified complaint, an order was duly made requiring the defendant city and county to show cause at a specified time and place why a temporary injunction should not be issued, restraining said defendant "during the pendency of this action and until its final determination from doing or continuing to do" any of said acts. Thereafter, summons and a copy of said order having been regularly served on said defendant, a hearing was regularly had on said order to show cause, both parties appearing and presenting their proofs, and the matter was submitted for decision. Thereafter, on July 7, 1915, the court (department No. 8, Hon. Geo. A. Sturtevant, judge), duly made its order granting the temporary injunction sought, upon the giving by the plaintiff of an undertaking, to be approved by the court, in the sum of one hundred thousand dollars. The order provided "that during the pendency of this action and until the final determination thereof" the defendant city and county desist and refrain from doing any of said acts. The required bond was given and approved, and thereupon, on said July 7th, the injunction was issued and served. On July 8, 1915, Hon. James M. Troutt, presiding judge of said court, made an *ex parte* order reassigning said action from department No. 8 of said court to department No. 1 thereof. On July 12, 1915, defendant city and

county served and filed its answer to the complaint in said action, denying material allegations thereof, and denying "the equities of plaintiff's action." Immediately thereafter defendant city and county gave notice of a motion for an order "staying the operation of the preliminary injunction" theretofore issued "until the final and full determination" of the cause, on grounds which it is not necessary to specify here further than to say that they presented no case for relief under section 473 of the Code of Civil Procedure and that all of them in effect went to the question of the propriety of granting the injunction in the first instance. On the same day the court (department 1, Hon. James M. Troutt, presiding) made an order requiring the plaintiff to show cause at the time and place specified in said notice why an order should not be made "suspending and staying the operation of the preliminary injunction heretofore issued in the above-entitled cause until the final determination of the above-entitled action or until a decision can be had upon the appeal about to be taken by defendant . . . from the order granting the motion of plaintiff for the issuance of said preliminary injunction." Upon the coming on of said motion and said order to show cause for hearing before Judge Troutt, objection was duly made to the court proceeding to hear and determine said matters on the ground that it was without jurisdiction to in any manner interfere with the operation of said temporary injunction. The court overruled said objection and declared its purpose to hear and determine the motion and order to show cause. Thereupon application was made to this court for a writ of prohibition. An alternative writ having been issued and a hearing having been had, the matter has been submitted to us for decision.

As indicated by us at the argument, we are of the opinion that upon the facts stated, the only question presented is this: In view of the provisions of our law, constitutional and statutory, has a superior court, which, by order duly and regularly made upon notice and hearing, has granted a temporary or provisional injunction absolutely restraining a defendant from the commission of certain acts during the pendency of the action, without reserving any right of revocation or modification, the power to subsequently make an order staying the operation of said injunction until the final determina-

tion of the cause, or until a contemplated appeal from said order has been heard and determined?

We entertain no doubt that this question must be answered in the negative.

It is declared by our Civil Code that "provisional injunctions are regulated by the Code of Civil Procedure." (Civ. Code, sec. 3421.) By sections 525 to and including 533 of the Code of Civil Procedure, in a title headed "Provisional Remedies in Civil Actions" there is provided a full and complete system of law and procedure as to granting, refusing, modifying and dissolving temporary injunctions. It is clearly and unequivocally provided therein in what cases such an injunction may be granted and in what cases it may not be granted; at what time and on what showing it may be granted, the law as amended in 1911 prohibiting the issuance of such an injunction except upon notice; that in the one case of an injunction applied for to prevent the diversion, diminution, or increase of the flow of water in its natural channels, an injunction may be refused upon the giving of a bond by defendant, though it be made to appear to the court that the plaintiff is entitled thereto, but that the issuance thereof pending the litigation will entail great damage upon defendant and that plaintiff will not be greatly damaged by the acts complained of pending the litigation, and can be fully compensated; that "if an injunction is granted without notice to the person enjoined, he may apply, upon reasonable notice to the judge who granted the injunction, or to the court in which the action was brought, to dissolve or modify the same," when each party may fully present by affidavit and otherwise his evidence material to the question whether the injunction shall continue or be dissolved or modified; that if upon such application it satisfactorily appears that there is not sufficient ground for the injunction, it must be dismissed, or if it appears that the extent of the injunction is too great, it must be modified; that in case of an injunction to prevent the diversion, pending the litigation, of water used or to be used for irrigation or domestic purposes only, if it be made to appear that great damage will be suffered by the person enjoined, in case the injunction is continued, and that the plaintiff can be fully compensated for any damage he may suffer by reason of the acts enjoined during the pendency of the litigation, the court in its discretion, may dissolve or

modify the injunction, upon the person enjoined giving a certain bond to secure the plaintiff against damage.   It is provided elsewhere in the Code of Civil Procedure that an appeal may be taken from an order granting or dissolving an injunction.   (Secs. 939, 963.)

We have stated the effect of the provisions of these sections to show the completeness of the scheme thereby provided and to show that the legislature has defined with precision, so far as it may do so, the extent of the power of trial courts in the matter of provisional injunctions.   In view of the nature of a provisional injunction, an injunction designed simply to prevent certain acts causing injury *during the pendency of the litigation,* and the language of the sections referred to, it is apparent that the legislature intended to devise a scheme by which the *status pending decision on the merits* might be definitely and finally determined once for all, so far as the trial court is concerned (except in the single case of the diversion, pending the litigation, of water used or to be used for irrigation or domestic purposes only), under which the only review allowed is a review on appeal.   That the legislature has effectually provided such a scheme, so far as it has the power under our constitution to do so, appears to us to be beyond doubt.   That such an injunction so granted on notice and opportunity to be heard may not subsequently be vacated or modified, pending trial on the merits, has several times been held by this court, under substantially similar provisions contained in our old practice act.   In *Natoma Water and Mining Co.* v. *Clarkin,* 14 Cal. 544, 551, where the trial court upon the answer of the defendants dissolved such an injunction previously granted on an order to show cause, this court, holding that such action was improper, said: ''By the statute the right to a temporary injunction pending the action is considered as adjudicated by the decision at the hearing upon the order to show cause.   The remedy of the defendants in such case, when the right to apply for dissolution upon the filing of the answer is not expressly reserved, is by appeal. The privilege of moving for dissolution, upon the filing of the answer, is limited to cases where the injunction is originally granted without notice to the adverse party.   The injunction must be restored until the final determination of the case, when the propriety of dissolving it, or of rendering it perpetual, will be determined according to the judgment in

the ejectment.'' In *Hicks* v. *Michael,* 15 Cal. 107, 117, it was again substantially declared that the right to such an injunction is to be regarded as adjudicated by the decision at the hearing on the order to show cause why it should not be granted. In *Natoma Water and Mining Co.* v. *Clarkin,* 16 Cal. 83, an appeal from an order dissolving such an injunction that had been granted upon an order to show cause and after a full hearing, it was squarely held that under the statute the right to move for a dissolution or modification of such an injunction was limited to cases where the injunction was granted without notice, that it did not exist in any other case, and that where such an injunction was granted on notice, the only remedy open to the defendant was an appeal. (See, also, 2 Hayne on New Trial and Appeal, sec. 191; *Curtis* v. *Sutter,* 15 Cal. 265.) These cases were cited and followed by the district court of appeal of the first district in *Ots* v. *Superior Court,* 10 Cal. App. 168, [101 Pac. 431], in which an order modifying such a temporary injunction granted after notice and hearing was annulled on *certiorari.* If the decisions of this court already cited were correct, of which we have no doubt, it seems to necessarily follow that the decision in *Ots* v. *Superior Court,* to the effect that the superior court had no power to modify or dissolve such an injunction was also correct. Nothing is more firmly settled in this state than the doctrine that the superior court may not revoke, modify, or otherwise disturb its judgments and orders regularly made in pursuance of plain statutory provision, where the statute prescribes the method by which such judgments and orders may be reviewed, except as authorized by statute. (See *Holtum* v. *Greif,* 144 Cal. 524, [78 Pac. 11]; *Carpenter* v.· *Superior Court,* 75 Cal. 596, [19 Pac. 174]; *Dorland* v. *Cunningham,* 66 Cal. 484, [6 Pac. 135]; *Coombs* v. *Hibberd,* 43 Cal. 452.) As was said by the late Chief Justice Beatty in *Holtum* v. *Greif,* 144 Cal. 524, [78 Pac. 11]: ''The question, then, is as to the power of the trial court to vacate an order granting or denying a new trial after it has once been regularly made and entered. The decisions of this court are numerous and uniform to the effect that a judgment or order once regularly entered can be reviewed and set aside only in the manner prescribed by statute. If they have been entered prematurely or by inadvertence, they may be set aside on a proper showing, and if the order as entered is not the order

as made, the minutes may be corrected so as to make them speak the truth, but subject to these exceptions the order is reviewable only on appeal, and the decision of the trial court having been once made after regular submission of the motion its power is exhausted—it is *functus officio.*"

It is claimed, however, that the relief sought by the motion and under the order to show cause herein involved, a suspension of the operation thereof until a determination on the merits of the determination of a contemplated appeal therefrom, would in no way reverse, modify, or vary the order against which relief is sought in the sense which precludes the granting of such relief by the superior court.    In support of this claim the case of *Genet* v. *President etc.,* 113 N. Y. 472, [21 N. E. 390], is cited.    This case involved the question of the right of the trial court by independent order to suspend the operation of a *final* judgment in equity absolutely prohibiting the defendants from doing certain acts, pending appeal therefrom.    It was said that if the effect of the order was "to reverse, modify, or vary the judgment for error in any point of substance, it would be clearly beyond its jurisdiction."    But it was said that the order did not assume the existence of any such power, but merely suspended the operation of the judgment until the appellate court passed upon the law, and that while it might be said that the order, in some sense, interfered with the judgment, by postponing its enforcement, this was thought to be within the competency of the trial court in the exercise of its equitable jurisdiction.    It was further said that "the incidental operation of the order in this way does not, we think, work any modification in the judgment in the sense which precludes the jurisdiction exercised."    This conclusion was opposed to the view of the superior court, in general term, on appeal from such order, which had held that if the order meant a release of the defendants from the duty of obeying the injunction decree for a time, it was contrary to the terms of the judgment, and at least a "modification" of the judgment, beyond the power of the trial court to make.    (*Genet* v. *Delaware etc. Canal Co.,* 4 N. Y. Suppl. 633.)    We are of the opinion that this is necessarily so, and cannot appreciate the force of the distinction in this regard made by the New York court of appeals in *Genet* v. *President etc.,* 113 N. Y. 472, [21 N. E. 390].    In *Hulbert* v. *California etc. Cement Co.,* 161 Cal. 256,

[38 L. R. A. (N. S.) 436, 118 Pac. 928], it was substantially said in the concurring opinion by Mr. Justice Sloss, signed by two other members of the court, with reference to a final injunction, that the effect of an order suspending the operation of a prohibitory injunction is to reverse, *pro tanto,* the judgment granting the injunction. This is perhaps more obviously apparent in the case of an order suspending the operation of an injunction *pendente lite,* as is stated in the concurring opinion referred to. The thing adjudicated by Judge Sturtevant here, and his order was "equally effective as if *all* the judges" of the superior court of the city and county of San Francisco had joined therein (Const., art. VI, sec. 6), was that the city and county be restrained from the commission of the specified acts at once and "during the pendency of this action and until the final determination thereof," which means, of course, until decree given on the trial on the merits. To say that a subsequent order by the same court suspending the operation of this order *during the pendency of the action and until the final determination thereof* would not be a complete setting aside and reversal of the former order is merely to trifle with words. The effect of such a subsequent order is manifest. Thereafter, and during the whole period covered by the first order, the defendant, instead of being enjoined from doing the prohibited things, would not be enjoined from doing any of them. And it is just as manifest that a subsequent order suspending the operation of the first order for any period embraced therein, is a reversal or setting aside *pro tanto* of the former order. Although what was said in *Hulbert* v. *California etc. Co.,* 161 Cal. 256, [38 L. R. A. (N. S.) 436, 118 Pac. 928], in this regard, was said by only three of the seven members of this court, it was not disputed by any of the other justices, and we are satisfied that it was correct. Somewhat in line on this question is *Wolf* v. *Board of Supervisors,* 143 Cal. 333, [76 Pac. 1108], where it was held that an order striking out a portion of a preliminary injunction order "had the effect of dissolving the injunction to that extent," and that it was therefore an appealable order as one *dissolving an injunction.*

It is further claimed that inasmuch as the state constitution of 1879 confers on the superior court "original jurisdiction in all cases in equity," and that as independent of statute, by virtue of such grant, such court would have the

power, incident to the exercise of that jurisdiction, to make such an order as that proposed, the legislature had no authority to thus limit the power of the superior court. We are not strongly impressed by the argument made in support of this claim. We are aware of the fact that by our constitution very many limitations have been imposed upon the legislative department, but we are satisfied that there is nothing therein that expressly or impliedly prevents the legislature from enacting such regulations as to the exercise by the superior court of its ''original jurisdiction in all cases in equity'' as those pertinent to the matter before us, to which we have already referred. It is a sufficient answer to the claim of respondents in this regard to point out that such statutory provisions have been a part of the law of the state from the very beginning; that the constitution of 1849 contained a provision in regard to the jurisdiction in equity of our old district courts similar, so far as any questions here involved are concerned, to that contained in our present constitution, the only difference between the original provision and the provision as amended in 1862 (which was literally copied into the constitution of 1879) being that the original provision limited the jurisdiction of the district court in both law and equity to cases where the amount in dispute exceeded two hundred dollars, while the amendment gave such .courts jurisdiction ''in all cases in equity'' regardless of the amount in dispute; that the validity of these statutory provisions was never questioned in any of the decisions, but that, to the contrary, they were applied and enforced by this court on several occasions; and that with this practical construction by this court of the effect of the provision in our old constitution the people in adopting the constitution of 1879 used substantially the same language as that contained in the old constitution. On this point what is said in *Camron* v. *Kenfield,* 57 Cal. 550, a case cited by respondents, is pertinent. It was there said: ''The new constitution was framed in view of the construction of the language used in the former constitution, unanimously concurred in by the members of the highest tribunal of the state. Yet the framers of the present constitution repeated the words employed in the former. We are forced to the conclusion that they used these words in the sense which had been attributed to them by the supreme court.''

The case of *City of Pasadena* v. *Superior Court,* 157 Cal.
781, [21 Ann. Cas. 1355, 109 Pac. 620], relied on by respond-
ents, is not opposed to our conclusion, nor is anything said
in the opinion in that case, when considered in connection
with the question there under discussion, so opposed.   The
question there, as aptly stated in the opinion of Mr. Justice
Lorigan, was whether a superior court in an action brought
to obtain a perpetual injunction, may in its final judgment
denying the right to such injunction provide nevertheless
for continuing in force pending a final determination of the
action, an injunction preliminarily issued; and again ''the
question here involves only the power of the superior court
by its final judgment and in the exercise of its original juris-
diction'' to make such provision.   The order there assailed
was held to be, in effect, a part of the final judgment.   It was
held that the superior court has the power in its final judg-
ment to continue in force a preliminary injunction so as to
maintain the *status quo* of the subject-matter of litigation
pending an appeal, notwithstanding that the right to a per-
petual injunction, which was the primary object of the action,
may have been denied by the judgment itself.   The conclusion
was based upon the proposition that such a power existed
in the chancery courts of England, and that, under our con-
stitution, the same power must be held to exist here, in the
absence of statutory provision unequivocally having a con-
trary effect.   It was shown by numerous citations that the
English courts of chancery had the power to thus preserve
the subject-matter of litigation in *statu quo* pending the final
determination of the controversy, in order that irremediable
injury might not be done to the complainant before his right
was finally determined.   It was further shown that there was
nothing in our statutes applicable to final injunctions which
could fairly be construed as abrogating or limiting this power.
In the action involved in that case the matter in issue was the
right of the plaintiffs to maintain their poles and wires in the
streets of the city of Pasadena, and the city was about to cut
down the poles and destroy the system.   The plaintiff sought
by the action a perpetual injunction, and after trial of the
action the court gave its final judgment denying the same,
thus dissolving the temporary injunction and leaving the city
of Pasadena at liberty to destroy the plaintiff's property
pending an appeal, unless the *status quo* could be preserved

pending the appeal. It was a typical case of the class in which that jurisdiction was exercised by courts of chancery in England and there was nothing in our statutes expressly or by necessary implication precluding such relief pending appeal from the final decree as was granted, viz., the preservation of the property threatened with destruction pending determination of such appeal. Here, as we have seen, we are dealing not only with a different question, viz., the power of the court to *withhold,* pending appeal, the relief adjudged essential to a preservation of the complainant's rights, but also its power to withhold by subsequent order, pending a final determination of the action or until a contemplated appeal be determined, the relief adjudicated essential after notice and hearing, by an order for an injunction *pendente lite.* From what we have said as to our statutory provisions on the subject of *such* injunctions, it is manifestly our opinion that they unequivocally have the effect of precluding any such exercise of power on the part of the trial court.

The case of *Pierce* v. *City of Los Angeles,* 159 Cal. 516, [114 Pac. 818], was an appeal from an order made after *final judgment* denying an injunction and dissolving a restraining order previously in force, which purported to continue such restraining order in force or to grant a new one. This order was made after the service and filing of a notice of a motion for a new trial, and was construed by both the district court of appeal and this court to be simply an order preserving the *status quo* of the matters embraced in the litigation "pending the hearing of the motion for a new trial" by the trial court. It was expressly conceded in the opinion that a court having once rendered a judgment, upon findings showing that no right to an injunction exists, dissolving a previous restraining order, could not in the same action, in the face of such findings and judgment, grant thereafter an injunctive order the effect of which would be to revive the previous restraining order, but it was thought that the court might thus maintain the *status* pending the determination by it of a motion for new trial lawfully pending before it. The case is manifestly not in point here.

Some cases are cited by respondents from other jurisdictions, in addition to *Genet* v. *President etc.,* 113 N. Y. 472, [21 N. E. 390], to which we have already referred. None of these refers, so far as we have been able to find, to such a

situation as we have here, in view of the facts and the statutes of this state relative to injunctions *pendente lite,* nor have we found anything in the opinions in these cases which we deem opposed to our conclusion. They simply sustain and apply the proposition that has been affirmed in this state to the effect that, *except as changed by constitutional or statutory provision,* courts invested with original jurisdiction in cases in equity, have the power possessed on July 4, 1776, by the chancery courts of England in the exercise of that jurisdiction. Regardless of what the powers of such chancery courts were in regard to such a situation as this case presents, a matter we have not investigated, our statutes clearly and definitely prescribe and limit such powers in such a way as to preclude any such action as that invoked at the hands of the respondents by the defendant in the injunction suit.

It follows from what we have said that, entirely regardless of any question of the correctness of the order granting the injunction *pendente lite,* a question not here involved, it may be reviewed or its operation suspended only in such ways as are authorized by our statutes, and that the superior court has no power to interfere with it in the manner proposed. The only remedy of the city and county of San Francisco, if aggrieved by the injunction issued, is an appeal from that order, or a trial of the action on the merits in the superior court. It is to be noted that section 527 of the Code of Civil Procedure, as amended in 1911, provides that when such an action is at issue, it shall be set for trial at the earliest possible date and shall take precedence of all other cases, except older matters of the same character, and matters to which special precedence may be given by law, so that no good reason appears why the city and county may not immediately bring the case to trial on the merits.

The alternative writ heretofore issued is made peremptory.

Sloss, J., Shaw, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.

LAWLOR, J., dissenting.—I dissent. I have reached the conclusion that to prohibit the superior court from entertaining the pending proceeding is a serious interference with its broad constitutional authority in the exercise of original juris-

diction in equity.   But as the other members of the court are of the view that because of the urgent nature of the proceeding the prevailing opinion should be filed forthwith, I shall defer a more extended statement of my views.

Rehearing denied.

Lawlor, J., dissented from the order denying a rehearing.